OPINION
Appellants Sherri and Jonathan Hilbert appeal from the June 19, 1998, Judgment Entry of the Licking County Common Pleas Court, Juvenile Division, permanently terminating their parental rights and granting permanent custody of Damien Hilbert, their son, to the Licking County Department of Human Services, Children Services Division for purposes of adoptive placement.
 STATEMENT OF THE FACTS AND CASE
Damien Hilbert, who was born on October 23, 1996, is the son of appellant Sherri Hilbert. Putative fathers include appellant Jonathan Hilbert, Damien's legal father, and William Young. Jonathan Hilbert and Sherri were married on November 20, 1996. On May 15, 1997, when Damien was approximately seven (7) months old, the Licking County Children's Services Division filed a complaint alleging Damien to be a dependent child. The complaint alleged that the child's home environment was unsafe and unclean and that the home contained no baby formula and minimal food. It also was alleged in the complaint that the child's parents were domestically violent, had a history of substance abuse and of neglect of the child, were young and impulsive, and were either unable or unwilling to provide adequate care and support for the child. Both parents had been arrested and charged with domestic violence on May 13, 1997. Pursuant to an ex parte emergency order, the Children's Services Division had, on May 14, 1997, removed Damien from the home based upon these allegations. An emergency shelter care hearing was held on May 15, 1997. Pursuant to a Magistrate's Order filed the next day, emergency shelter care custody of Damien was granted to the Licking County Department of Human Services. Damien was physically placed in the home of his paternal great aunt, Susan Arick, and her husband. An adjudicatory hearing before the Magistrate was held on July 14, 1997. At such hearing, Sherri Hilbert entered a plea of admission to the complaint and the Magistrate, based upon such admission, the testimony and other evidence presented and the recommendation of David S. Sims, the Guardian ad Litem, found, by clear and convincing evidence, that Damien was a dependent child. The Magistrate, with the consent of the parties, then proceeded to the dispositional hearing. As a result of such hearing, the Magistrate recommended that temporary custody of Damien be granted to the Licking County Department of Human Services, Children's Services Division. The Magistrate further recommended that the Hilberts be ordered to comply with the case plan which was filed on June 13, 1997. The case plan required them to maintain permanent stable housing, resolve domestic violence and substance abuse issues, establish paternity, take parenting classes and enhance their parenting skills and financially support Damien. The Magistrate's Decision was approved and adopted as a court order on July 14, 1997. An amended case plan modifying visitation was filed in October of 1997. The Children's Services Division, on April 13, 1998, filed a Motion for Permanent Custody of Damien, alleging that the Hilberts had made minimal progress on the case plan and had not stabilized their lives in any significant way. The social worker's summary, which was incorporated by reference into such motion, indicated that the Hilberts still lacked stable housing and employment, that Jonathan Hilbert continued abusing alcohol, and that the couple had "regular periods of chaos in their marriage" provoked by "unresolved issues of unemployment, alcohol usage, illegal actions and unstable housing." The social worker further indicated that Damien was thriving in his aunt and uncle's home and that his aunt and uncle would be able to adopt him. A hearing on the motion was held on June 17 and 18, 1998. At the permanent custody hearing, testimony was presented regarding appellants' continuing housing problems. Although she claimed to have maintained stable housing for a seven month period, appellant-mother testified that appellants had ongoing problems paying their rent and had been served with a notice of eviction. At one point in September of 1997, appellants were forced to move in with appellant father's parents due to their homelessness. Testimony was also adduced at the hearing regarding appellant father's domestic violence and alcohol problems. Appellant father, who admitted that he was an alcoholic who had started drinking at the age of eight (8), failed to follow through with referrals for alcohol dependency treatment. While he claimed to have attended AA meetings frequently, he was unable to either name his sponsor or list AA's twelve steps. Only after he was notified that the Children's Services Division intended to seek permanent custody of his son did appellant father go to an alcohol prevention program for an assessment. When he was asked how alcohol had affected his life, appellant father responded as follows: "As far as how alcohol has affected my life, I have had a rocky employment history. Most of it due from my alcoholism, getting drunk, not wanting to work, getting drunk while on lunch break or what have you. Being sent home from work, being fired from work for not showing up from being drunk.
My alcoholism also had a very large impact on my relationship with Sherri, my relationship with my family." Transcript of Proceedings, at 231.
Evidence was also adduced to the effect that household income was used to purchase alcohol for appellant Johnathan Hilbert rather than towards housing and other necessities. Both appellant mother and appellant father testified as to a violent incident that occurred on May 23, 1998, less than a month before the permanent custody hearing. Appellant mother testified that she called the police on such date after her husband, who was intoxicated, threw a remote control at her, slammed her head against the wall, and later jumped through a closed second story window. Appellant husband did not recall doing so, claiming that he suffered a blackout. Although he was referred to domestic violence groups on at least two (2) occasions, appellant father never attended any group sessions. Andrea Hand, a social worker with the Licking County Department of Human Services, Children's Services Division, testified that she had gone over role-modeling with appellants since they were calling each other names during visits with their son. She further testified that, although appellants had attended parenting classes, appellant father had been repeatedly asked not to "rough-handle" his son. Transcript of Proceedings, at 151. Appellant father admitted that during one of his visits with Damien, he had told Damien to hit appellant mother and that he was rough with his son since he himself was "raised roughly". Transcript of Proceedings, at 233. Appellant father also conceded that he was unable to apply what he had learned during the parenting classes. In addition to testifying about appellants' lack of parenting ability, Hand testified that her attempts to assist appellants with obtaining stable housing and employment were met with resistance. At the hearing, Dr. Richard E. Jackson testified on behalf of the State. Dr. Jackson, who had conducted complete psychological evaluations of appellants, testified that appellants' home would be an "unpredictable" and "conflict-filled" environment for Damien. Transcript, at 57. Dr. Jackson further testified that neither parent was mentally healthy and that appellants' psychological profiles working together could "be a little bit of volatile combination". Transcript, at 49. Appellant mother also testified at the hearing. Appellant mother testified that, while pregnant with the couple's second child, she had reported to the police that she had been raped when, in fact, she had had an affair. During the hearing, she confessed that she had lied to the police. She also falsely reported to the police, in May of 1998, that her daughter had been kidnaped. Despite the Guardian ad Litem's written report and his testimony to the effect that the Motion for Permanent Custody should be denied since appellants had remedied many of the problems leading to Damien's removal and that the parents should be given an additional six (6) months to work on the case plan, the trial court granted permanent custody to the Licking County Department of Human Services, Children's Services Division. The court, in its June 19, 1998, decision, found by clear and convincing evidence that it was in the best interests of the child to permanently terminate all parental rights. Pursuant to a Judgment Entry filed the same day, the Court awarded permanent custody of Damien to the Children's Services Division and permanently terminated appellants' parental rights. The Court further stated that the Children's Services Division was to assist Damien's paternal aunt and uncle in adopting him. It is from the trial court's June 19, 1998, Judgment Entry that appellants prosecute this appeal, raising the following assignment of error:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANTS AND IN VIOLATION OF OHIO REVISED CODE SECTION 2151.414 WHEN IT TERMINATED THE PARENTAL RIGHTS OF APPELLANTS AND GRANTED PERMANENT CUSTODY OF DAMIEN HILBERT TO LICKING COUNTY CHILDREN'S SERVICES, WHERE THE EVIDENCE FAILED TO SATISFY THE REQUISITE STANDARD OF PROOF.
 I
In their assignment of error, appellants raise sufficiency of the evidence claims relative to the trial court's granting permanent custody of Damien to the Licking County Department of Human Services and finding it was in the child's best interests to do so. We are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v Jeffries (Feb. 10, 1982), Stark App. No. CA-5758, unreported. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction (1978), 54 Ohio St.2d 279. R.C. 2151.414
provides, in relevant part: (B) The court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply: (1) The child is not abandoned or orphaned and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (2) The child is abandoned and the parents cannot be located; (3) The child is orphaned and there are no relatives of the child who are able to take permanent custody.
In determining the best interest of a child, R.C. 2151.414(D) states: (D) . . . the court shall consider all relevant factors, including, but not limited to, the following: (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) The custodial history of the child; (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.
We find the trial court's finding that it was in Damien's best interest to award permanent custody to the Licking County Department of Human Services is supported by competent, credible evidence and is not against the manifest weight of the evidence. Lori Carlson, an adoption assessor with the Licking County Department of Human Services, stated that adoptive placement would positively benefit the child and that granting permanent custody to the Department of Human Services would facilitate his adoption. She further stated that Damien needed a permanent and stable relationship and that postponement of the grant of permanent custody would create a negative effect on Damien. According to Carlson, any postponement could result in impairment of Damien's ability to form relationships and to bond with others. The court, in its decision, noted that Damien had a significant relationship with his paternal aunt and uncle who were his physical caretakers. However, a best interest determination is insufficient in and of itself to award permanent custody of a child to an agency and to terminate parental parents. In this matter, the trial court found, pursuant to R.C. 2151.414(B)(1), that Damien could not be placed with either of his parents within a reasonable time or should not be placed with his parents. In reaching this determination, the trial court relied upon R.C. 2151.414(E)(1). Such section provides as follows: "(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 [2151.35.3] of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 [2151.35.3] of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent: (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties."
The record reveals that appellant father has an extensive history of alcohol abuse that has directly contributed to long periods of employment and domestic abuse including an incident occurring only a month before the permanent custody hearing. Despite his problems, appellant father repeatedly disregarded referrals to alcohol abuse and domestic violence programs. Although he had approximately twelve months to remedy his alcohol problem, he only entered into alcohol dependency treatment weeks before the permanent custody hearing. As a result of the foregoing, appellants have been unable to maintain stable housing and, at one point, were homeless. Moreover, testimony was presented at the hearing to the effect that appellants have not remedied problems associated with their parenting style. While, as appellants argue, they completed the required parenting program, the record reveals that appellants did not successfully incorporate what they were taught during such program into their interaction with Damien. Appellants continued to engage in very rough play with Damien and appellant father encouraged Damien to act in a violent manner towards his mother. By his own admission, appellant father was, at times, unable to apply what he learned in the parenting program. In short, the record reveals that despite approximately a year to do so, and many referrals for assistance, appellants failed continuously and repeatedly to substantially remedy the problems with housing, domestic violence, alcohol and parenting that led to Damien's removal and that were set forth in the case plan. Moreover, the record is also replete with numerous instances when appellants behaved in an immature and inappropriate manner. The grant of permanent custody to the agency, therefore, was a proper disposition. Based on the foregoing, we find that the trial court's findings that Damien cannot and should not be placed with any parent within a reasonable period of time and that it was in Damien's best interest for appellants' parental rights to be terminated were supported by clear and convincing evidence. We further find that the trial court's granting of permanent custody of Damien to the Licking County Department of Human Services is supported by competent, credible evidence and is not against the manifest weight of the evidence. Appellants sole assignment of error is overruled.
The judgment of the Licking County Court of Common Pleas, Juvenile Division, is affirmed.
By:
Edwards, J. Hoffman, J. And Wise, J. concur